747 F.2d 781
 241 U.S.App.D.C. 344
 TRANSWESTERN PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Intratex Gas Company, Interstate Natural Gas Association of
America, Intervenors.
 No. 82-2298.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 21, 1983.
Decided Nov. 9, 1984.
 
 Cheryl M. Foley, Houston, Tex., with whom Jack E. Earnest, Houston, Tex., was on the brief, for petitioner.
 John H. Cheatham, Washington, D.C., for intervenor, Interstate Natural Gas Ass'n of America.
 John H. Conway, Atty., F.E.R.C., Washington, D.C., with whom Stephen R. Melton, Acting Gen. Counsel, and Barbara J. Weller, Deputy Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent. Andrea Wolfman, Atty., F.E.R.C., Washington, D.C., also entered an appearance for respondent.
 Karol Lyn Newman, Washington, D.C., with whom John E. Holtzinger, Jr., and Jane I. Ryan, Washington, D.C., were on the brief for intervenor, Intratex Gas Co.
 Before MIKVA and SCALIA, Circuit Judges, and RICHEY, District Judge of the United States District Court for the District of Columbia.*
 Opinion for the Court filed by Circuit Judge SCALIA.
 SCALIA, Circuit Judge:
 
 
 1
 Transwestern Pipeline Company petitions this court to set aside a declaratory order of the Federal Energy Regulatory Commission which granted Intervenor Intratex Gas Company permission to engage in a proposed gas exchange agreement without becoming subject to the jurisdiction of the Commission. In our view, the only issue presented is the proper interpretation of the order.
 
 
 2
 * The Natural Gas Act of 1938 ("NGA"), ch. 556, 52 Stat. 821 (codified as amended at 15 U.S.C. Secs. 717-717w (1982) ), established federal regulation of the transportation and sale for resale of natural gas in interstate commerce. It did not extend regulation, however, to the production and gathering of natural gas, or to its transportation and sale intrastate, NGA Sec. 1(b), 15 U.S.C. Sec. 717(b), thus creating a distinction between interstate and intrastate markets which survives to this day. Transwestern is a natural gas company engaged in the interstate transportation of natural gas, and is therefore subject to Commission regulation. Intratex is an intrastate gas company which has operated in the Texas market free from Commission regulation. The order at issue in this case involves the interaction between the interstate and intrastate markets, holding that a proposed transaction by Intratex will not subject that company or its affiliates to Commission jurisdiction.
 
 
 3
 Intratex arranged to purchase up to 1000 Mcf per day of natural gas produced in New Mexico from HNG Oil Company ("HNG"), a wholly owned subsidiary of Intratex's sole shareholder, Houston Natural Gas Corporation. Lacking means to transport the gas to its intrastate pipeline in Texas, Intratex agreed with Transwestern that the New Mexico gas would be delivered to Transwestern, which would then deliver a thermally equivalent volume of gas (but not the same gas) to Intratex in Texas. The Commission regards exchange agreements of this sort as regulated transportation, treating them as though they provide for actual transportation of the purchased gas across state lines. See 18 C.F.R. Sec. 284.1(a) (1984); Transwestern Pipeline Co., 19 F.E.R.C. (CCH) p 61,191, at p. 61,371 n.5 (1982) (Declaratory Order). Transwestern's delivery to Intratex in this case was not to be made directly, but rather by reducing the amount of gas due to Transwestern (under a pre-existing exchange agreement) from Oasis Pipeline Co., a Texas intrastate company affiliated with Intratex; Oasis would then deliver those volumes of gas to Intratex instead. To the extent that Oasis could not complete the deliveries, Transwestern would deliver gas directly to Intratex. The agreement was to be in force for ten years, extending year-to-year thereafter.
 
 
 4
 The Transwestern-Intratex agreement allowed either party to terminate if the Commission did not issue an order before June 30, 1981, stating, to Intratex's satisfaction, that the transaction would not subject Intratex to Commission jurisdiction. On December 12, 1980, Transwestern filed with the Commission an application for an Order Approving Exchange of Natural Gas, as is required, under the regulations implementing the exemptions the parties sought to use, for transportation agreements of more than two years' duration. See 18 C.F.R. Secs. 284.102(a) & (b)(1)(i), 284.107 (1984). On the same day, Intratex filed a Petition to Intervene requesting a Commission ruling that the transaction would not subject Intratex or its affiliates to the jurisdiction of the Commission.
 
 
 5
 On April 23, 1982, before the Commission had ruled on this application, Transwestern exercised its power to terminate the agreement, and four days later filed a notice with the Commission to withdraw its application. On May 10, after learning that the Commission still carried the Transwestern-Intratex requests on its docket, Transwestern wrote the Commission asking it to dismiss the matter as moot. The Commission, at the urging of Intratex, nonetheless proceeded to examine the transaction. It noted that Intratex was still obligated to purchase gas from HNG and would therefore seek to complete transactions of this type in any event. The Commission additionally was unwilling to ignore the "substantial effort" it had already expended. On May 25, 1982, it issued a declaratory order in the proceeding, Transwestern Pipeline Co., 19 F.E.R.C. (CCH) p 61,191, at p. 61,370 (1982) (Declaratory Order), and on September 22 denied Transwestern's application for rehearing. Transwestern Pipeline Co., 20 F.E.R.C. (CCH) (p 61,327 (1982) (Order on Rehearing). Transwestern petitioned this court for review under 15 U.S.C. Sec. 717r(b). Intratex intervened on behalf of the Commission, and Interstate Natural Gas Association of America ("INGAA") on behalf of Transwestern.
 
 II
 
 6
 It is uncontested that under Sec. 7(c) of the Natural Gas Act, 15 U.S.C. Sec. 717f(c), both the sale of gas from HNG to Intratex and the transportation of that gas from New Mexico to Texas would require a certificate of public convenience and necessity, and would cause HNG, Intratex, and Oasis to become regulated natural gas companies within the meaning of NGA Sec. 2(6), 15 U.S.C. Sec. 717a(6). The issue addressed in the Commission's declaratory order here was whether these consequences are altered by the Natural Gas Policy Act of 1978 ("NGPA"), Pub.L. No. 95-621, 92 Stat. 3350 (1978) (codified at 15 U.S.C. Secs. 3301-3432 (1982) ). Subparagraphs 601(a)(1)(A) & (D) of the NGPA, 15 U.S.C. Sec. 3431(a)(1)(A) & (D), state that gas not previously committed or dedicated to interstate commerce will not, solely by reason of a first sale of the gas, be subject to the Commission's jurisdiction, and that companies involved in such sales will not become federally regulated companies solely by reason of those transactions.[1] And subparagraphs 601(a)(2)(A) & (B), 15 U.S.C. Sec. 3431(a)(2)(A) & (B), provide that the transportation of gas pursuant to NGPA Sec. 311(a), 15 U.S.C. Sec. 3371(a), will not be jurisdictional and involved parties will not become federally regulated companies.[2] NGPA Sec. 311(a) was the provision relied on in Transwestern's application, authorizing the Commission to approve certain transportation of natural gas by interstate pipelines.[3]
 
 
 7
 The positions of the parties with regard to the substance of the transaction are as follows: All are agreed that the sale from HNG to Intratex imposes no jurisdictional consequences. The Commission and Intratex maintain that the interstate transportation does not as well; Transwestern and INGAA contend that it does, since Sec. 311, despite its categorical language, is meant to permit interstate pipelines to transport on behalf of intrastate pipelines only intrastate, and also because the portion of the transportation that was to be conducted in the present transaction by Oasis (an intrastate pipeline) was to be conducted not "on behalf of an interstate pipeline" (i.e., Transwestern), as Sec. 311 requires, but on behalf of Intratex, another intrastate pipeline.[4] Finally, and perhaps most important--both for this case and for the structure of natural gas regulation in general--Transwestern and INGAA contend that whether or not the sale and transportation impose jurisdictional consequences, the gas remains interstate gas, so that any subsequent transportation within Texas, or sale at wholesale, by Intrastate itself would cause Intratex to be a federally regulated company. Intratex asserts the opposite of this last proposition, contending that the exemptions would be pointless if they did not permit the gas received under them to be marketed. As for the Commission, it expresses no view on this last issue, contending that the point was not addressed in the order under challenge. Petitioner and intervenor INGAA also raise several other issues, including the lawfulness, under the Commission's regulations and under general principles of administrative law, of issuing a declaratory order covering a "hypothetical" situation, i.e., a transaction that had been cancelled and request for approval of which had been withdrawn; the necessity of making the current ruling through rulemaking instead of adjudication; the lack of adequate notice of the proceeding; and even the denial of equal protection of the laws in permitting intrastate pipelines to compete with interstate pipelines on an unfair basis.
 
 
 8
 Logically prior to all those controversies, however, there is a dispute as to what the order says. The Commission contends that it holds that HNG, Intratex and its affiliates escape federal regulatory jurisdiction only with regard to the portions of the contemplated transaction up to and including the delivery of gas to Intratex. Transwestern and both intervenors contend that it also embraces activities further "downstream"--i.e., Intratex's subsequent transportation and sale within Texas. This dispute is central to the case because the only harm that Transwestern and INGAA assert that the order inflicts upon them is the ability of Intratex to compete with Transwestern and other federally regulated interstate pipelines in the sale of natural gas. If in fact the order, because it is limited as the Commission contends, does not permit such competition, the petitioner and intervenor INGAA have not been injured nor even have any immediate prospect of future injury, since the Commission may well find that the "downstream" activities alone trigger federal jurisdiction. Under these circumstances, neither petitioner nor intervenor INGAA is a "party aggrieved" as required to maintain this appeal, 15 U.S.C. Sec. 717r(b).[5]
 
 
 9
 We have carefully reviewed the May 25 Order and the Order on Rehearing. While the unsuspecting reader would normally conclude that they were meant to address the jurisdictional consequences of Intratex's receipt of this gas for the purposes of the business in which Intratex was engaged--if only because the whole proceeding was a barren exercise unless that was understood--it is nonetheless impossible to identify any portion of the Commission's opinions that requires such a conclusion. To be sure, the May 25 Order describes Intratex's request as a request for "a specific finding that as a result of this sale and transportation neither it nor any of its affiliates, nor their facilities, sales, and service associated with the proposed transaction, will become subject to the Commission's Natural Gas Act jurisdiction." Declaratory Order, 19 F.E.R.C. at pp. 61,370-71 (emphasis added). However, the Commission's formal disposition provided only that "[Intratex's] request for declaratory relief is granted to the extent discussed above." Id. at p. 61,371 (emphasis added). And the above discussion only expressed agreement with Intratex's contention that "if the proposed arrangement is authorized pursuant to NGPA Section 311(a)(1), it will not result in [Intratex's] becoming a 'natural-gas company' subject to the Commission's jurisdiction," and affirmed that "[t]he fact that [Intratex] receives the gas from sources outside the state does not affect its jurisdictional status." Id. (emphasis added). The Order on Rehearing, specifically addressing Transwestern's complaint that the Commission had failed "to look beyond the immediate transaction in order to determine the jurisdictional consequences of related transactions," did not dispute the contention, but responded: "To the extent that any doubt surrounds our May 25 order, the parties are free to seek additional clarification at the time they apply for Section 311(a) transportation authorization." Order on Rehearing, 20 F.E.R.C. at p. 61,680. This is not, as counsel for the Commission would have us believe, Brief for Respondent at 29, an assertion of the limited scope of the ruling; but neither is it any indication that the ruling was broad. Finally, Commission counsel's interpretation of the order is consistent with the approach taken by the Commission in Delhi Gas Pipeline Corp., 19 F.E.R.C. (CCH) p 61,189, at p. 61,365 (1982), decided the same day as the May 25 Order, that "[u]nder the Natural Gas Act, a separate jurisdictional analysis must be applied to each transportation and sale for resale in the flow of gas from the wellhead to the burner tip." Delhi explicitly rejected the notion that an exemption would immunize gas from "downstream" jurisdictional consequences. 19 F.E.R.C. at pp. 61,365-66. In another case decided the same day, United Gas Pipe Line Co., 19 F.E.R.C. (CCH) p 61,190 (1982), the Commission approved a transaction--from wellhead to end use--based on an application disclosing each step in the movement of the gas to ultimate consumer. It is plausible to assume that, on the same day it issued Delhi and United, the Commission would not have issued the Transwestern Order interpreted as petitioner would have it, without more specific indication of subsequent transportation and sale than the observation in the prologue of the order that Intratex "purchases and resells gas in the intrastate market" and "sells volumes to its affiliate, Houston Pipe Line Company (HPL), which transports and resells gas to others," Declaratory Order, 19 F.E.R.C. at pp. 61,369-70.
 
 
 10
 In point of fact, the only solid indication petitioner and Intervenor INGAA can point to as evidence of the broad scope of the order is that it is utterly fatuous on any other assumption--not resolving the only issue of any practical consequence to the requesting party, and thus not achieving the stated purpose of the Commission's declaratory orders, "to terminate a controversy or remove uncertainty," 18 C.F.R. Sec. 1.7(c) (1981) (amended and recodified at 18 C.F.R. Sec. 385.207(2) (1984)). It is a comically irrelevant response to Intratex, a marketer of natural gas, to say "we agree that you can obtain this gas without relinquishing your exemption from federal regulation, but we express no opinion as to whether you can market it." There comes to mind a childhood rhyme:
 
 
 11
 Mother, may I go out to swim?
 
 
 12
 Yes, my darling daughter.
 
 
 13
 Hang your clothes on the hickory limb,
 
 
 14
 But don't go near the water.
 
 
 15
 There is no law, however, against the Commission's giving comically irrelevant responses--and even doing so in violation of its own regulations--unless it harms someone in the process, which this order (assuming Commission counsel's emasculating interpretation) can hardly do. If the order as interpreted by counsel for the Commission caused some concrete injury, we might consider the sheer uselessness of agency action which that interpretation produces adequate reason to prefer another meaning. In the present case, however, rejecting Commission counsel's version would not prevent any concrete injury, and would place us in the position of deciding important issues under a new statute with deference to a Commission interpretation that is not explicit and that counsel for the Commission repudiates. On balance, we think the lesser of the evils is to assume that the Commission has done a vain act.
 
 
 16
 It cannot escape anyone's observation that the present litigation, and the considerable expense to both the Government and private parties that it has entailed, would have been entirely unnecessary if, when Transwestern's application for rehearing specifically presented the issue just discussed, the Commission had not chosen to be coy, and had said what Commission counsel now tells us instead of stating that "[t]o the extent that any doubt surrounds our May 25 order, the parties are free to seek additional clarification at the time they apply for Section 311(a) transportation authorization." Order on Rehearing, 20 F.E.R.C. at p. 61,680. The Commission has, in short, managed to transform the device of declaratory order from a means of removing uncertainty to a means of spreading confusion, from a dispute-settling mechanism to a font of litigation. We note that our present decision at least prevents the Commission from profiting from this exercise by relying upon the present order as an approval of "downstream" activities in this or a subsequent case. At needless inconvenience to all involved, including this court, we eliminate the doubt that the Commission has pointlessly created.
 
 
 17
 We authoritatively interpret the order, as counsel for the Commission would have us do, to speak only to the elements of the subject transaction up to Intertex's receipt of the gas. Since, as so interpreted, it cannot conceivably harm petitioner and intervenor INGAA (or, for that matter, conceivably help Intratex which sought the order) we find that we have before us no "party aggrieved" within the meaning of 15 U.S.C. Sec. 717r(b), and therefore cannot entertain this appeal. The petition for review is
 
 
 18
 Dismissed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 292(a) (1982)
 
 
 [1]
 The statute provides:
 (a) Jurisdiction of the Commission under the Natural Gas Act.
 (1) Sales.
 (A) Natural gas not committed or dedicated.
 For purposes of section 1(b) of the Natural Gas Act, effective on the first day of the first month beginning after November 9, 1978, the provisions of the Natural Gas Act and the jurisdiction of the Commission under such Act shall not apply to natural gas which was not committed or dedicated to interstate commerce as of November 8, 1978, solely by reason of any first sale of such natural gas.
 ....
 (D) Natural-gas company.
 For purposes of the Natural Gas Act, the term "natural-gas company" (as defined in section 2(6) of such Act) shall not include any person by reason of, or with respect to, any sale of natural gas if the provisions of the Natural Gas Act and the jurisdiction of the Commission do not apply to such sale solely by reason of subparagraph (A) ... of this paragraph.
 15 U.S.C. Sec. 3431(a)(1).
 
 
 [2]
 The statute provides:
 (a) Jurisdiction of the Commission under the Natural Gas Act.
 ....
 (2) Transportation.
 (A) Jurisdiction of the Commission.
 For purposes of section 1(b) of the Natural Gas Act the provisions of such Act and the jurisdiction of the Commission under such Act shall not apply to any transportation in interstate commerce of natural gas if such transportation is--
 ....
 (ii) authorized by the Commission under section 3371(a) of this title [NGPA Sec. 311(a)].
 (B) Natural-gas company.
 For purposes of the Natural Gas Act, the term "natural-gas company" (as defined in section 2(6) of such Act) shall not include any person by reason of, or with respect to, any transportation of natural gas if the provisions of the Natural Gas Act and the jurisdiction of the Commission under the Natural Gas Act do not apply to such transportation by reason of subparagraph (A) of this paragraph.
 15 U.S.C. Sec. 3431(a)(2).
 
 
 [3]
 NGPA Sec. 311(a) provides in relevant part:
 (a) Commission approval of transportation.
 (1) Interstate pipelines.
 (A) In general.
 The Commission may, by rule or order, authorize any interstate pipeline to transport natural gas on behalf of--
 (i) any intrastate pipeline; and
 (ii) any local distribution company.
 ....
 (2) Intrastate pipelines.
 (A) In general.
 The Commission may, by rule or order, authorize any intrastate pipeline to transport natural gas on behalf of--
 (i) any interstate pipeline; and
 (ii) any local distribution company served by any interstate pipeline.
 15 U.S.C. Sec. 3371(a).
 
 
 [4]
 The Commission seeks to take no position on this appeal insofar as the portion of the transportation involving Oasis is concerned. The Commission's brief asserts that the order did not decide that Oasis would be entitled to Sec. 311 authorization as an intrastate pipeline transporting "on behalf of" an interstate pipeline, but rather merely assumed such authorization as one of the givens. Brief for Respondent at 29-30 n. 36. If that were true, the Commission's order would be even more vapid than we think, amounting to no more than a statement that if an exemption is obtained for the interstate transportation contemplated, the interstate transportation contemplated will be exempt. In fact, however, the Commission's Order on Rehearing makes clear that the only assumption involved was an assumption that Oasis's arrangement with Transwestern would include "a contract provision which recites that the transportation would be on behalf of the interstate pipeline." Order on Rehearing, 20 F.E.R.C. at p. 61,681 n. 3. Counsel's characterization of this as an assumption that Sec. 311 authorization has been obtained is, to put it mildly, unhelpful to the court--and frankly gives ground for concern whether the attempt to minimize the content of the rest of the order is similarly contrived
 
 
 [5]
 Of course the Commission's conclusion as to the "upstream" portions of the transaction deprives Transwestern and INGAA of a legal theory which they would like to use in attacking the "downstream" portions that do them harm. But the adoption of uncongenial legal principles that do not have immediate adverse effect or even immediate prospect of adverse effect is not enough to create a "person aggrieved." See North Carolina Utilities Commission v. FERC, 653 F.2d 655, 662-63 & n. 27 (D.C.Cir.1981)